THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHARON L. BOWERS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT PASSET, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DORIS PASSET, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY PASSET, Appellant.

Fourth Department, December 23, 1980

### APPEARANCES OF COUNSEL

*Condon, Sedita, La Tona & Personius, P. C. (John Condon* of counsel), for appellants.

*Michael P. Nevins* for respondent.

### OPINION OF THE COURT

CARDAMONE, J.

Four members of a family appeal from judgments holding them in contempt for refusing to answer questions asked of them by a Grand Jury investigating a death that had occurred on a farm operated by appellant Sharon L. Bowers' husband. A prime suspect was Mrs. Bowers' brother, Keith Passet. She and other members of the family

wanted to assert the privilege of confidential communication when present before the Grand Jury. We are not called upon to consider the merits of the privilege sought to be invoked, but rather our review is limited to the question of whether she was entitled to waive immunity and thereby to have counsel accompany her before the Grand Jury.

Before the Grand Jury Mrs. Bowers gave her name and address and then refused to answer further questions, stating, "I refuse to answer any more questions until my lawyer is present with me." After being ordered by the Judge to answer the questions, Mrs. Bowers again refused to answer and asked to be allowed to execute a waiver of immunity in order to secure the statutory right under CPL 190.52 to be accompanied in the Grand Jury room by her attorney. The District Attorney declined the offer and Mrs. Bowers was then warned that she was in danger of being held in contempt. Upon returning to the Grand Jury chambers, Mrs. Bowers made the following statement: "I most respectfully request that a waiver of immunity be executed here so that I may have my lawyer present." She refused to answer further questions and, upon being brought back to the courtroom, was held in contempt. Substantially the same scenario was enacted with the other appellants.

Two points are raised on this appeal. First, appellants claim that a Grand Jury witness has an absolute right to execute a waiver of immunity and that such must be accepted by the District Attorney. Second, they urge that even if the right to the waiver is not absolute, it must be granted in light of New York's statutory and judicial policy of fairness toward Grand Jury witnesses. Respondent insists that no such right exists in fact or by implication.

The Grand Jury is an institution of long history and is firmly established by constitutional provisions in our judicial system. Its general functions "are to hear and examine evidence concerning offenses and concerning misconduct, nonfeasance and neglect in public office, whether criminal or otherwise, and to take action with respect to such evidence" (CPL 190.05). In order to be effective in its investigative function, it is necessary that the Grand Jury be able to compel testimony from witnesses. The means by which

this compulsion is exercised is the contempt proceeding employed in this case.

The power to compel testimony is not absolute. When the witness who is questioned is the subject of the criminal investigation or is tainted by the crime involved in the investigation, the broad investigatory powers of the Grand Jury are subordinated to a claimed constitutional privilege against self incrimination. Since on many occasions the witness most knowledgeable of a crime is one tainted by participation in it, claims of a Fifth Amendment privilege could entirely thwart a Grand Jury's investigation and make it impossible for a Grand Jury to function. The remedy is to grant immunity to that witness, the view being that once a witness has been bathed in immunity, no longer able to hide behind the privilege of self incrimination, he may be compelled, on pain of contempt, to divulge his information. After experimenting for a few years with a concept of "claimed" immunity, the Legislature adopted, in 1971, a statutory scheme granting automatic transactional immunity to all witnesses appearing before any Grand Jury (CPL 190.40). With this "automatic" immunization, it was no longer necessary ritually to confer immunity on a witness before the witness could be compelled to answer the Grand Jury's inquiries.

An automatic grant of immunity would not resolve all problems. Were immunity to be granted in all cases, a guilty person could, through collusion, become a witness and, as discussed in an analogous context, "obtain an immunity bath without the knowledge or consent of a public prosecutor who would otherwise be able to prosecute him criminally" (Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 190.40, p 123). This possibility was cured by that part of CPL 190.40 which "simply requires every witness called in a Grand Jury proceeding to give any evidence legally requested of him and, with two qualifications confers immunity upon him in return for such evidence. The first qualification is the self-evident one that a witness who has signed an effective waiver of immunity does not receive immunity" (Denzer, *op. cit.*, p 127). The net effect of CPL 190.40 was "(1) to remove the present doubt and confusion as to whether a so-called

'target' of an investigation may be called as a witness and compelled by an offer of immunity to testify concerning the activity of other persons implicated in the crime under investigation; and (2) to extend the immunity grant weapon to prosecutors in their investigation of all crime rather than, as at present, only with respect to investigation of a selected few offenses" (Gilbert, Criminal Law and Procedure [1979-1980 ed], 1970 Memorandum of Commission on Revision of the Penal Law and Criminal Code, p 1B-5).

It can be seen that the plain purpose of the statutory grant of immunity is to aid the Grand Jury in its investigative function. The "waiver of immunity" is a method by which a prosecutor may allow a witness to give evidence to the Grand Jury while preserving his right to prosecute the witness for the crime under investigation. Of course, a witness who has waived immunity may seek shelter behind his privilege against self incrimination and have a lawyer present to advise him when to do so (CPL 190.52). If, as appellant alleges, everyone called before the Grand Jury has a right to waive immunity and the concomitant right, otherwise, to refuse to testify, the Grand Jury's power to compel testimony from a tainted witness will have been abrogated. Were appellants' arguments to prevail, a tainted witness who was reluctant to testify against his accomplices could waive immunity and refuse to divulge any information that might tend to incriminate him. We cannot adopt such view which would hinder the District Attorney's prosecution of crime and seriously curtail the Grand Jury's effectiveness.

"Traditionally, our courts have afforded the Grand Jury the widest possible latitude in the exercise of these powers and insisted that in the absence of a clear constitutional or legislative expression they may not be curtailed [citations omitted]" *(People v Stern,* 3 NY2d 658, 661; *Matter of Grand Jury Subpoenas [Morgenthau],* 58 AD2d 1). "[E]very person owes society his testimony, unless some recognized privilege is asserted" *(United States v Mandujano,* 425 US 564, 572; *Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe,* 50 NY2d 14, 20). We recognize as a practical matter that most laymen would not be familiar with the rules of privileged communication

and that the presence of the witnesses' counsel would undoubtedly aid a witness in protecting his or her rights. (See 1 Waxner, Bender's New York Criminal Practice, par 8.11 [7], pp 8-36—8-38). The law does not afford this protection to such a Grand Jury witness. In 1968 the Court of Appeals held that while a witness has the right to consult with his lawyer, he has no right that a lawyer be present with him in the Grand Jury room *(People v Ianniello*, 21 NY2d 418, cert den 393 US 827).

We hold that there is no statutory right to waive immunity. Appellants must accept the automatic grant of transactional immunity.

The judgments should be affirmed.

DILLON, P. J., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Judgments unanimously affirmed.