OPINION OF THE COURT
Max H. Galfunt, J.
This is a motion by the defendant for an order pursuant to CPL 160.50 sealing his arrest record and returning his fingerprints and photographs.
The defendant was arrested on September 22, 1977 and charged with rape in the first degree (Penal Law, § 130.35), *362 sodomy in the first degree (Penal Law, § 130.50), and unlawful imprisonment in the second degree (Penal Law, § 135.05).
After a hearing, the felony complaint was converted to an information charging sexual misconduct (Penal Law, § 130.20), sexual abuse in the third degree (Penal Law, § 130.55), and unlawful imprisonment in the second degree (Penal Law, § 135.05).
On December 1, 1977, the court marked the action final against the People for December 21, 1977. Judge Lane dismissed the case on that date with the notation "People not ready.”
The defendant now contends that this dismissal entitled him to the benefits available under CPL 160.50, i.e., the sealing of his arrest record and the return of his fingerprints and photographs.
It is well settled now that CPL 160.50 (subd 2) sets forth the exclusive circumstances under which the remedies of sealing the record and returning fingerprints and photographs will be made available to a defendant. The courts are not faced with the dilemma of interpreting the key phrase "in favor of such person” since the Legislature specifically set forth those instances which it considered necessitated the relief. (See People v Casella, 90 Misc 2d 442; People v Blackman, 90 Misc 2d 977.)
By enacting this very comprehensive list, the Legislature clearly indicated its meaning, so that construction is unnecessary. In such a case it is the duty of the court to carry out the express legislative intent and not read a different intent into the law by the aid of the canons of construction (McKinney’s Cons Laws of NY, Book 1, Statutes, § 91).
An individual would be entitled to the relief sought if the dismissal of the action against him constituted one of the instances set forth under CPL 160.50 (subd 2). This court must, therefore, attempt to define the prior court’s action in order to determine whether or not it falls within the ambit of CPL 160.50 (subd 2).
In view of the fact that this case deals with the dismissal of an information, we must refer to those sections in CPL 160.50 (subd 2) which provide for the dismissal of informations.
Examination of the statute reveals CPL 160.50 (subd 2, par [b]) and specifically CPL 170.30 are the relevant sections of subdivision 2.
CPL 170.30 provides for the statutory dismissal of an infor *363 mation upon the motion of a defendant based on the various grounds enunciated. Of the seven possible theories for dismissal contained within CPL 170.30, only two could possibly apply to the instant case.
CPL 170.30 (subd 1, par [e]) provides for dismissal of the action when the defendant has been denied the right to a speedy trial. However, this basis may be eliminated due to the fact that the court record contains no formal speedy trial motion initiated by the defendant as required. There is further reason for disregarding this theory since there is an absence of any time computation of the type which ordinarily accompanies the determination of such a motion pursuant to the time limitations set forth in CPL 30.30.
It may also readily be concluded that the court did not act "in the interest of justice” pursuant to CPL 170.40. Nowhere is there indicated that it was a matter of judicial discretion based upon some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of this defendant would constitute or result in injustice (CPL 170.40, subd 1). Nor are there enunciated any of the statutorily required statements setting forth the reasons on the record upon which the court may have relied in reaching its decision (CPL 170.40, subd 2; see People v Clayton, 41 AD2d 204).
How can the actions of the court be classified? They must be deemed a "dismissal for failure to prosecute.” This reflects the power of the court to control its calendar.
The power to control a calendar is a vital consideration in the administration of the courts (Headley v Noto, 22 NY2d 1). -
In Riglander v Star Co. (98 App Div 101, 104, affd 181 NY 531), the court stated: "One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.”
The inherent power of the judiciary is a judicial power, but only in the sense that it is a natural necessary concomitant to judicial power: "The 'inherent powers’ of a court are such as result from the very nature of its organization and are essen *364 tial to its existence and protection and to the due administration of justice. It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.” (14 Am Jur, Courts, § 171.)
This exercise by the court of calendar control is a fundamental common-law right (Ballard v Billings & Spencer Co., 36 AD2d 71), and the court is entrusted with wide discretion in exercising calendar control (Wahrhaftig v Space Design Group, 33 AD2d 953).
The court is under the affirmative duty to see that litigation is disposed of with reasonable dispatch. Calendar congestion is of vital concern (Matter of Brooklyn Bar Assn., 223 App Div 149; Judiciary Law, § 2-b).
Some sister States have held that occasionally the inherent judicial power can override statutes and State constitutional provisions (People v Western Union Tel. Co., 70 Col 90).
It is essential to keep in mind that the primary function of a court is the orderly and expeditious processing of litigation. To this end, it has been repeatedly remarked that every court has the inherent power to do what is reasonably necessary for the administration of justice within the scope of its jurisdiction (Langan v First Trust & Deposit Co., 270 App Div 700).
Therefore, the "dismissal for failure to prosecute” may be deemed to fall under this power of the court.
Is the dismissal of the charges due to the failure of the People to prosecute within a reasonable or specific period of time actually a speedy trial determination with the final and binding effect of CPL 170.30 (subd 1, par [e]) (parallelling CPL 210.20, subd 1, par [g])?
As stated in People v Morgan (90 Misc 2d 416, 418): "While the underlying facts which may prompt a Judge * * * to dismiss for failure to prosecute may also constitute the basis for a speedy trial motion, the parameters are not coextensive. A dismissal for failure to prosecute a criminal case has no statutory premise and is based upon the actual or implied abandonment of the proceedings by the District Attorney. A speedy trial motion alleges a violation of a defendant’s constitutional right to a speedy trial. (CPL 30.20, 30.30.)”
With the advent of CPL 30.30 and its set time limitations, the dismissal for failure to prosecute is still invoked. *365 When a court does act to dismiss the charges for failure to prosecute, it reflects an impatience by the court with the People’s efforts (or lack of effort) to move promptly. But it is not a speedy trial motion, pursuant to CPL 30.30, which has procedural aspects as set forth in CPL 170.45 and 210.45.
Clearly, the two motions are distinguishable.
The law prior to the enactment of the CPL was the Code of Criminal Procedure. The title to chapter 7 thereof provided for dismissal of a criminal action, before or after indictment for want of prosecution or otherwise. This chapter was intended to remedy the defect in the then existing practice that when a defendant was held to answer or was indicted there was no mode of compelling the prosecution to proceed to trial or to be relieved from the indictment (McKinney’s Cons Laws of NY, Book 66, Code Grim Pro, tit 12, ch 7, p 687, Note of Commission). These few archaic provisions weakly purported to prohibit undue delays at certain pretrial stages of an action by calling for dismissal of an indictment when certain events did not happen at the next term of the court (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.30). These sections dealt only with prosecutions after indictment, not prosecution of misdemeanors.
Section 673 of the Code of Criminal Procedure stated: "An order for the dismissal of the action, as provided in this chapter, is a bar to another prosecution for the same offense, if it be a misdemeanor; but, except as provided in section six hundred sixty-nine-a [and] section six hundred sixty-nine-b hereof, it is not a bar, if the offense charged be a felony.” (Emphasis added.)
Some case law suggested this section referred solely to dismissals for lack of prosecution. The statutes showed a specific intent on the part of the Legislature that a person should not be subjected to a second charge which is not of a serious criminal nature if the same charge has been previously dismissed for lack of prosecution (People v Miller, 63 Misc 2d 879).
People v Hicks (62 Misc 2d 79) takes a different and what this court believes is the correct interpretation of section 673. The case involved misdemeanor traffic offenses which had been dismissed for failure to prosecute.
The court cited section 673 of the Code of Criminal Procedure, and noted it is contained in chapter 7 of the Code of Criminal Procedure. The heading on chapter 7 reads "Dis *366 missal of the Action, Before or After Indictment, for Want of Prosecution or Otherwise.”
The court read the section of chapter 7, and, exclusive of section 673, the entire chapter pertained to felonies and any misdemeanors which became subject for a Grand Jury action (by Code Grim Pro, §§ 57, 59).
The court concluded (p 82): "In enacting section 673 of the Code of Criminal Procedure, the Legislature has expressed the intent that misdemeanors which become the subject of Grand Jury action and which are dismissed for failure to prosecute shall not be prosecuted thereafter; but the Legislature has not expressed the intent that all misdemeanors and traffic infractions which are dismissed for failure to prosecute shall not thereafter be prosecuted.”
Except within the concepts of chapter 7 discussed, section 673 of the Code of Criminal Procedure did not prevent possible future prosecution where the initial charge was dismissed by the court for failure of the People to prosecute.
As stated, section 673 of the Code of Criminal Procedure provided that dismissal of a misdemeanor pursuant to chapter 7 was a bar to another prosecution for the same offense, unless it was a felony. This final termination theory, if carried over into the CPL, would make a strong argument for allowing the relief under CPL 160.50, the design of which was to protect the rights of individuals against whom criminal charges have been brought, but which did not ultimately result in a conviction (NY Legis Ann, 1976, p 408). After enactment of the new CPL, however, the failure of the Legislature to continue that bar, which does not appear to be an oversight, allows the District Attorney to reinstate a misdemeanor complaint which has been dismissed because the People were not ready to proceed. According to the table correlating the sections of the Code of Criminal Procedure with the CPL, section 673 was transferred to CPL 210.20 (subd 4) dealing exclusively with the dismissal of indictment. The Legislature obviously did not intend to transfer that section to CPL 170.30, which provides for dismissal of informations even though it is the parallel section to CPL 210.20. Nowhere in the CPL is there a provision that dismissal of an information is a bar to a new prosecution (Matter of Krum v Hogan, 69 Misc 2d 656; People v Ackrish, 92 Misc 2d 431; contra see People v Scerbo, 91 Misc 2d 97).
*367 The case of Matter of Krum v Hogan (supra) demonstrates only certain situations for renewed prosecution.
Matter of Krum v Hogan involved an article 78 proceeding seeking an order of prohibition which would bar a renewed prosecution of petitioner for a misdemeanor. The misdemeanor had been initially dismissed.
The petitioner had been arraigned in Criminal Court. The Assistant District Attorney stated that the People could not prove the case beyond a reasonable doubt. Therefore, the prosecutor’s motion to dismiss the criminal charges was granted.
One month later, a different Assistant District Attorney moved to restore the case to the calendar. The motion was granted.
On the initial dismissal, the grounds for dismissal were not specifically stated. The court assumed the charge was dismissed "in furtherance of justice” pursuant to CPL 170.30 (subd 1, par [g]).
Justice Gellinoff in Hogan (supra) made some interesting observations.
The dismissal involved a misdemeanor. Thus, CPL 170.30 and 170.40 govern. The court goes on to state (p 657):
"Nowhere, however, do these sections, or any other sections in the Criminal Procedure Law, provide that the dismissal of an information is a bar to a new prosecution.
"This failure of the Criminal Procedure Law to bar renewed prosecution of a misdemeanor that has been dismissed, does not appear to be a legislative oversight. For the Legislature did provide for a bar to renewed prosecution in other instances. Sections 210.20 and 210.40, which pertain to dismissals of indictments (they are the counterparts of sections 170.30 and 170.40 which pertain to informations), bar renewed prosecutions where an indictment has been dismissed due to immunity, double jeopardy, Statute of Limitations, and denial of a speedy trial (CPL 210.20, subd. 1, pars, [d], [e], [f], [g], [h]). An indictment dismissed (in the interest of justice’ (CPL 210.20, subd. 1, par. [i]) is not barred from renewed prosecution where further prosecution is authorized by the court (CPL 210.20, subd. 4).” (Emphasis added.)
Judge Gellinoff places a dismissal for failure to prosecute in the "interest of justice category” and uses excellent reasoning to demonstrate that it was the intent of the Legislature *368 not to bar renewed prosecution when a dismissal in the interest of justice occurs.
As pointed out by the Krum case, a dismissal for failure to prosecute is not one of the situations set forth in CPL 210.20 (subd 1), whereby a renewed prosecution is barred.
Thus, a question of first impression arises: Does a dismissal of an information, based upon the inherent power of a court to control its calendar, constitute a termination of the action in favor of the defendant as contemplated by CPL 160.50?
This court does not believe so. First, a dismissal for failure to prosecute is subject to renewed prosecution, thus making any sealing of the record less than effective.
Also, while CPL 160.50 (subd 2) does include other dismissals which may be subjected to renewed prosecution, a dismissal for failure to prosecute is not one of them. When a dismissal for lack of prosecution is granted, the court is exercising its calendar control function authorized by its inherent power. No reliance is had on statutorily authorized power.
In Matter of People v Little (89 Misc 2d 742, 745), the court stated: "Under the inherent powers doctrine a court has all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective * * * Inherent judicial powers derive not from legislative grant or specific constitutional provision, but from the fact it is a court which has been created, and to be a court requires certain incidental powers in the nature of things.”
As stated in section 2-b of the Judiciary Law: "A court of record has power * * * 3. to devise and make new process and forms of proceedings, necessary to carry into effect the powers and jurisdiction possessed by it.”
For the above-stated reasons the court denies the defendant’s motion for an order sealing his arrest record and returning his fingerprints and photographs.
This court would, however, entertain a subsequent motion by the defendant pursuant to CPL 170.30 (subd 1, par [e]) in that the defendant has been denied the right to a speedy trial. At no time since this action was begun by the defendant’s arrest on September 22, 1977 have the People been ready to proceed or indicated to the court that it wished to restore this matter to the calendar or otherwise pursue it. If this formal *369 motion were to be granted, based on the fact that more than the applicable CPL 30.30 time period has expired, then the court would be required to automatically provide the relief available under CPL 160.50 since that section requires no motion by the defendant to trigger the court’s responsibility to issue a sealing order.
Motion to seal pursuant to CPL 160.50 is denied.
One further comment is required regarding CPL 160.50 as to procedure is required. As it stands now, CPL 160.50 (subd 1) merely states that "Upon the termination of a criminal action or proceeding against a person in favor of such person * * * the court wherein such criminal action or proceeding was terminated shall enter an order” (emphasis added).
It is true that the court may enter the sealing order. But currently it is only in response to the defendant’s motion. The statute should reflect the correct procedure (i.e., the defendant files a motion in the court wherein such criminal action or proceeding was terminated).
CPL 160.50 motions have and are being made. The statute should reflect the proper procedure rather than assume the defendant will take the appropriate action.